971 A.2d 434 (2009)
407 N.J. Super. 379
UNITED HEARTS, L.L.C., Plaintiff,
v.
Mozafar ZAHABIAN, a/k/a Mike Zahabian, Defendant, and
Zan Associates, L.L.C., Defendant-Respondent/Cross-Appellant.
In the Matter of Charles I. Epstein, Esq., Appellant/Cross-Respondent.
No. A-6234-07T3.
Superior Court of New Jersey, Appellate Division.
Argued March 24, 2009.
Decided May 29, 2009.
*436 Christopher J. Koller argued the cause for appellant/cross-respondent.
Elliott Joffe, Hackensack, argued the cause for respondent/cross-appellant (Newman & Simpson, L.L.P., attorneys; Mr. Joffe, of counsel and on the brief).
Before Judges PARKER, YANNOTTI and LeWINN.
The opinion of the court was delivered by
YANNOTTI, J.A.D.
Charles I. Epstein (Epstein) appeals and defendant Zan Associates, L.L.C. *437 (Zan) cross-appeals from an order entered by the trial court on July 17, 2008, which imposed sanctions upon Epstein pursuant to Rule 1:4-8(d). For the reasons that follow, we reverse the trial court's order and dismiss the cross-appeal.

I.
This appeal arises from the following facts. On May 4, 2005, plaintiff United Hearts, L.L.C. (United) filed an action in the trial court against defendant Mozafar Zahabian (Zahabian) seeking damages arising from the ownership of certain property located at 341 Grove Street in Jersey City, New Jersey. On November 17, 2005, following a proof hearing, the court entered a default judgment against Zahabian in the amount of $603,437.50.
On May 8, 2007, Epstein filed a complaint on behalf of plaintiff and named Zahabian and Zan as defendants. In its complaint, plaintiff alleged that, on or about September 30, 2005, Zahabian had executed a deed transferring to Zan title to certain property at 26 Cornelison Avenue in Jersey City. Plaintiff alleged that Zahabian was one of Zan's officers, directors and members. Plaintiff claimed that it had attempted to collect and enforce its default judgment against Zahabian in the underlying action but had been unable to do so because Zahabian had transferred the Cornelison Avenue property to Zan for $1.00.
In counts one and two of the complaint, plaintiff asserted claims under the Uniform Fraudulent Transfer Act (UFTA), N.J.S.A. 25:2-20 to -34. Plaintiff alleged in count one that Zahabian transferred the property without fair and adequate consideration and that the conveyance of the property to Zan was made with the actual "intent to hinder, delay and defraud" Zahabian's creditors, including plaintiff, and therefore constituted a fraudulent transfer under N.J.S.A. 25:2-25a. In count two, plaintiff alleged that the conveyance was a fraudulent transfer under N.J.S.A. 25:2-27b because the property had been conveyed to an "insider". In count three, plaintiff alleged that Zahabian and Zan had been unjustly enriched by the transfer of the property. Plaintiff sought, among other things, a judgment setting aside the conveyance.
On the date that it filed its complaint, plaintiff also filed and recorded a notice of lis pendens regarding the Cornelison Avenue property in the Register of Deeds for the County of Hudson. The notice referred to plaintiff's lawsuit against Zahabian and Zan.
On June 1, 2007, Zan's counsel served upon Epstein a notice pursuant to Rule 1:4-8(b), demanding that the complaint be withdrawn. The notice stated that "[t]he uncontroverted documentary evidence which has been submitted to you demonstrates that there is no factual or legal basis for a claim against [Zan]." The notice also stated that failure to withdraw the "[o]bjectionable [p]leading" may subject plaintiff to sanctions pursuant to the rule.
Because plaintiff did not withdraw its complaint, Zan filed an answer on July 5, 2007, in which it denied plaintiff's allegations. Zan also filed a counterclaim seeking a judgment discharging the notice of lis pendens.
On July 5, 2007, Zan also filed a motion for discharge of the notice of lis pendens. Zan argued, among other things, that the notice should be set aside because plaintiff could not establish that there is a probability that a final judgment would be entered in its favor on its claims. Plaintiff opposed the motion.
The trial court considered Zan's motion on August 3, 2007, and placed its decision on the record on that date. The court *438 concluded that plaintiff had not shown a probability of success on its claims, which is required by N.J.S.A. 2A:15-7b for the filing of the notice of lis pendens. The court accordingly entered an order dated August 3, 2007, granting Zan's motion and discharging the notice.
On September 18, 2007, Zan's counsel sent Epstein another notice pursuant to Rule 1:4-8(b), again demanding that the complaint be dismissed. In the notice, Zan's counsel stated that plaintiff's claims failed for all of the reasons Zan had advanced in its motion for discharge of the notice of lis pendens.
Zan's counsel additionally stated that dismissal of the claims was required because plaintiff had not conducted "even the most basic investigation into the veracity or falsity of its claim, either prior to filing same or upon receipt of the information tending to disprove" that claim. Plaintiff did not withdraw its complaint.
On February 28, 2008, Zan filed a motion for summary judgment. On March 14, 2008, Zahabian filed a cross-motion seeking the same relief. On March 17, 2008, plaintiff filed papers opposing the motions and a cross-motion for summary judgment.
The trial court considered the motions on March 28, 2008. The court granted Zan's and Zahabian's motions for summary judgment on counts two and three of the complaint, but denied their motions as to count one. The court also denied plaintiff's motion in its entirety.
In the decision that it placed on the record on March 28, 2008, the court noted that plaintiff had not opposed the dismissal of the claim in count three for unjust enrichment. The court also found that plaintiff had not presented sufficient evidence to support the claim in count two that the conveyance was a fraudulent transfer of the property under N.J.S.A. 25:2-27b because it had been made to an "insider."
The court noted that, in order to prevail on count two, plaintiff had to establish that Zahabian was insolvent at the time of the transfer and that the "insider had reasonable cause to believe that [Zahabian] was insolvent" at the time. Ibid. The court stated that there was no proof that Zahabian was insolvent when he conveyed the property to Zan.
Epstein agreed and stated that the claim in count two had been "mislabeled" as a claim involving a fraudulent transfer of property to an "insider" under N.J.S.A. 25:2-27b and the allegation should be considered as subsumed in the claim asserted in count one, in which plaintiff alleged that Zahabian had made a fraudulent transfer as defined in N.J.S.A. 25:2-25a because he conveyed property "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor."
The court stated that, in determining "actual intent" under N.J.S.A. 25:2-25a, it was required to consider the factors, or "badges" of fraud, identified in N.J.S.A. 25:2-26. The court noted that plaintiff had not produced an expert report and, without an expert, plaintiff could not establish the factor under N.J.S.A. 25:2-26h (debtor did not receive "reasonably equivalent value" for the asset transferred). The court further observed that there was a genuine issue of material fact as to whether plaintiff could establish the factor under N.J.S.A. 25:2-26a (the transfer was made to an "insider").
The court accordingly decided that defendants were not entitled to summary judgment on count one. The court commented, however, that plaintiff "ha[d] a rather steep and long [row] to hoe in order to" establish that Zahabian conveyed the property to Zan with the "actual intent to hinder, delay, or defraud" plaintiff.
*439 Trial in the matter commenced on April 7, 2008. Plaintiff presented testimony from two witnesses. The matter was adjourned to April 29, 2008. On April 24, 2008, the court granted Zahabian's motion to vacate the default judgment in the underlying action. Plaintiff thereafter elected to withdraw its complaint in this matter. On May 19, 2008, plaintiff filed a stipulation dismissing its claims against Zahabian and Zan with prejudice.
On May 29, 2008, Zan filed a motion for the imposition of sanctions upon plaintiff under the frivolous litigation statute, N.J.S.A. 2A:15-59.1, and upon Epstein pursuant to Rule 1:4-8(b). In its motion, Zan sought an award of counsel fees in the amount of $44,148.50 and costs of $3,356.26.
The trial court considered Zan's application on July 3, 2008, and placed its decision on the record on that date. The court found that this was not a matter in which it would be appropriate to impose sanctions upon plaintiff pursuant to N.J.S.A. 2A:15-59.1 because "[t]his is a type of litigation where the client is normally advised by the attorney how and when and where and under what circumstances to file the complaint and prosecute the complaint."
The court then considered whether Epstein violated Rule 1:4-8 in pursuing the matter on plaintiff's behalf. The court noted that Rafael Sharaf (Sharaf), plaintiff's managing member, had provided answers to interrogatories in October 2007. In his answers, Sharaf stated that Zahabian transferred the Cornelison Avenue property to Zan without fair and adequate consideration, relying upon the statement on the deed that the property had been transferred for $1.00. The court noted that Epstein had not investigated the statement in the deed which indicated that the consideration for the transfer had been valued at $800,000.
The court also noted that Epstein had not deposed any witnesses and did not retain an expert. The court stated that defendants had deposed Sharaf in January 2008, and, when he was asked for the factual support for plaintiff's allegations, Sharaf said that he would have to go back and "study" what had occurred. The court stated that "after awhile, there begins to be an inference ... that these were claims that were prosecuted without much investigation at all[.]"
The court additionally pointed out that, when Zan moved for summary judgment, plaintiff did not oppose the dismissal of count three. In addition, plaintiff offered no evidence that Zahabian was insolvent on or after the date of the transfer, which is required to establish a fraudulent transfer under N.J.S.A. 25:2-27b, as alleged in count two of the complaint. The court concluded that the imposition of sanctions upon Epstein pursuant to Rule 1:4-8(d) was warranted because of the manner in which he had pursued the matter, specifically his failure to retain an expert, his failure to take any depositions, and his minimal investigation of the facts.
The court further determined that Epstein should pay the attorneys' fees and costs incurred by Zan from the inception of the lawsuit until March 28, 2008, when the court decided the summary judgment motions and allowed the matter to proceed to trial on count one. The court apparently reasoned that Epstein should not be required to pay the costs and expenses of the litigation after March 28, 2008, because the court should have dismissed all of the claims at that time.
Thereafter, Zan's attorneys submitted a certification of services, in which they sought $34,151.50 in fees and $3,058.89 in costs, for a total of $37,210.39. Zan's attorneys *440 also sought $7,717.80 for the fees and costs associated with the Rule 1:4-8 motion.
The court entered an order on July 17, 2008, imposing sanctions upon Epstein in the amount of $37,210.39. The court refused to award Zan counsel fees and costs for the Rule 1:4-8 motion. Epstein filed a notice of appeal on August 25, 2008, and Zan filed a notice of cross-appeal on September 8, 2008.

II.
Epstein argues that the court erred by finding that he commenced this action and pursued the matter in violation of Rule 1:4-8(a). We agree.
Rule 1:4-8 permits an attorney to be sanctioned for asserting frivolous claims on behalf of a client. Rule 1:4-8(a) provides that:
[t]he signature of an attorney or pro se party constitutes a certificate that the signatory has read the pleading, written motion or other paper. By signing, filing or advocating a pleading, written motion, or other paper, an attorney or pro se party certifies that to the best of his or her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
(1) the paper is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
(3) the factual allegations have evidentiary support or, as to specifically identified allegations, they are either likely to have evidentiary support or they will be withdrawn or corrected if reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support; and
(4) the denials of factual allegations are warranted on the evidence or, as to specifically identified denials, they are reasonably based on a lack of information or belief or they will be withdrawn or corrected if a reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support.
A court may impose sanctions upon an attorney if the attorney files a paper that does not conform to the requirements of Rule 1:4-8(a), and fails to withdraw the paper within twenty-eight days of service of a demand for its withdrawal. R. 1:4-8(b)(1).
For purposes of imposing sanctions under Rule 1:4-8, an assertion is deemed "frivolous" when "`no rational argument can be advanced in its support, or it is not supported by any credible evidence, or it is completely untenable.'" First Atl. Fed. Credit Union v. Perez, 391 N.J.Super. 419, 432, 918 A.2d 666 (App.Div.2007) (quoting Fagas v. Scott, 251 N.J.Super. 169, 190, 597 A.2d 571 (Law Div.1991)).
"Where a party has [a] reasonable and good faith belief in the merit of the cause, attorney's fees will not be awarded." Ibid. (citing DeBrango v. Summit Bancorp., 328 N.J.Super. 219, 227, 745 A.2d 561 (App.Div.2000); K.D. v. Bozarth, 313 N.J.Super. 561, 574-75, 713 A.2d 546 (App.Div.), certif. denied, 156 N.J. 425, 719 A.2d 1023 (1998)). When considering sanctions under Rule 1:4-8, the court must give a "`restrictive interpretation'" to the term "`frivolous'" in order to avoid limiting access to the court system. Id. at 433, 918 A.2d 666 (quoting McKeown-Brand v. Trump Castle Hotel *441 and Casino, 132 N.J. 546, 561-62, 626 A.2d 425 (1993)).
"[C]ontinued prosecution of a claim or defense may, based on facts coming to be known to the party after the filing of the initial pleading, be sanctionable as baseless or frivolous even if the initial assertion of the claim or defense was not." Iannone v. McHale, 245 N.J.Super. 17, 31, 583 A.2d 770 (App.Div.1990) (applying N.J.S.A. 2A:15-59.1). The "requisite bad faith or knowledge of lack of well-groundedness may arise during the conduct of the litigation." Ibid. (citing Chernin v. Mardan Corp., 244 N.J.Super. 379, 582 A.2d 847 (Ch.Div.1990)).
Sanctions are warranted "`only when the pleading as a whole is frivolous or of a harassing nature[.]'" Id. at 32, 583 A.2d 770 (quoting Romero v. City of Pomona, 883 F.2d 1418, 1429 (9th Cir.1989)). "`That some of the allegations made at the outset of litigation later proved to be unfounded does not render frivolous a complaint that also contains some non-frivolous claims.'" Ibid. (quoting Romero, supra, 883 F.2d at 1429).
In reviewing the award of sanctions pursuant to Rule 1:4-8, we apply an abuse of discretion standard. Masone v. Levine, 382 N.J.Super. 181, 193, 887 A.2d 1191 (App.Div.2005). An "abuse of discretion is demonstrated if the discretionary act was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error of judgment." Ibid. (citing Flagg v. Essex County Prosecutor, 171 N.J. 561, 571, 796 A.2d 182 (2002)).
Here, the trial court essentially found that all of the claims in plaintiff's pleading were frivolous because the claims lacked adequate evidential support. The court did not find that Epstein violated Rule 1:4-8 by filing the pleading. Rather, the court determined that Epstein violated the rule because he did not withdraw the pleading even though, as the case proceeded, it had become clear that there was insufficient evidence to support the claims and Epstein failed to investigate the facts, conduct depositions or retain an expert.
We are convinced that, based on the fact that plaintiff had secured a default judgment against Zahabian and the fact that the deed indicated that Zahabian transferred the Cornelison Avenue property to Zan for a nominal sum, Epstein had a reasonable basis to file a complaint against defendants alleging that the transfer of title constituted a fraudulent conveyance by Zahabian intended to hinder, delay or defraud plaintiff and a fraudulent transfer of property to an "insider" for purposes of the UFTA. Moreover, the facts gave Epstein a reasonable basis to believe that defendants may have been unjustly enriched by the transfer of the property. Thus, at the time the complaint was filed, the complaint was not a frivolous pleading under Rule 1:4-8.
We are also convinced that Epstein was not required to withdraw the pleading on July 1, 2007, after Zan's counsel issued the first notice pursuant to Rule 1:4-8(b) demanding that he do so. The record shows that, after the complaint was filed, Zan's counsel had provided Epstein with a copy of the Zan operating agreement, dated September 30, 2005, and the amendment to that agreement, dated June 20, 2007. Those documents indicated that Zan had been established for the purpose of developing the Cornelison Avenue property, as well as certain other properties in Jersey City. Zahabian had contributed the property to Zan. The other two members of the company both contributed $250,000.
The Zan operating agreement provided that, upon formation of the company, a "preferential" distribution would be made to Zahabian and his son in the amount of *442 $564,695.01. The agreement also provided that, upon the closing of a construction loan for the property, Zahabian and his son would receive an additional "preferential" distribution in the amount of $2,035,304.99, and the other two members would each receive $250,000. Further, the agreement required Zahabian to pay off the outstanding mortgages on the property by the time he received the "preferential" distribution of $2,035,304.99.
The amendment to the agreement stated that Zahabian and his son had been paid $564,695.01 when the company was formed. The amendment additionally stated that the company had obtained approval to redevelop the Cornelison Avenue property; however, certain areas of possible environmental concern had arisen, which had delayed the plans to develop the site.
The amendment further provided that the corporation could be dissolved at Zahabian's election in the event he was not paid the "preferential" distribution of $2,035,304.99 within a specified period of time. The amendment stated that, in the event the company was dissolved for this reason, title to the Cornelison Avenue property would be transferred back to Zahabian upon the return of the "preferential" distribution previously paid to him and his son.
Although Zan's counsel insisted that these documents showed that there was no factual or legal basis to plaintiff's claims, the production of the documents did not render the complaint frivolous. In our judgment, Epstein was not obligated at that stage of the proceedings to accept the documents and the statements contained therein at face value.
Indeed, Rule 1:4-8(a)(3) makes clear that an attorney need not withdraw a pleading if it is "likely" that the allegations will have evidentiary support or "will be withdrawn or corrected if reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support[.]" Thus, plaintiff's complaint did not violate Rule 1:4-8(a) when Zan tendered the documents to Epstein.
Similarly, the complaint was not a frivolous pleading within the meaning of Rule 1:4-8(a) even after Zan had successfully moved to discharge the notice of lis pendens and Zan's counsel issued the second Rule 1:4-8(b) notice. In granting Zan's motion, the trial court found that, based on the record before it at that time, plaintiff had not shown that a final judgment would probably be entered in plaintiff's favor. Thus, the court did not find that there was no factual or legal basis for plaintiff's claims. Moreover, the motion to discharge the lis pendens was made at an early stage of the litigation and Epstein still had the opportunity under our court rules to pursue discovery.
We are additionally convinced that Epstein was not required to withdraw the complaint even after the court granted in part, and denied in part, Zan's and Zahabian's motions for summary judgment. Those motions were decided on March 28, 2008. As we stated previously, Epstein did not oppose the grant of summary judgment on count three. He also essentially conceded that he did not have factual support for the claim in count two that the conveyance of the Cornelison Avenue property was a fraudulent transfer under N.J.S.A. 25:2-27b because it had been made by a debtor to an "insider" who had reasonable cause to believe that the debtor was "insolvent" at the time.
Despite these concessions, Epstein argued that defendants were not entitled to judgment on count one, in which he alleged that the conveyance of the property was a fraudulent transfer under N.J.S.A. 25:2-25a *443 because it had been made with the actual "intent to hinder, delay and defraud" plaintiff. The trial court decided that plaintiff had presented sufficient evidence to defeat the summary judgment motion on that count and allowed the case to proceed to trial.
When the trial court ruled on Zan's motion for Rule 1:4-8 sanctions, it essentially found that it erred by denying defendants' motions for summary judgment on count one. The court found that, contrary to its earlier ruling, there was insufficient evidence to support the claim in count one. The court therefore determined that the entire complaint was frivolous within the meaning of Rule 1:4-8(a). The court further indicated that Epstein had proceeded in bad faith because he had not properly investigated the facts, failed to retain an expert to testify as to the value of the property, and conducted no depositions.
We are convinced, however, that Epstein cannot be deemed to have litigated the matter in bad faith up until the time the court ruled on defendants' summary judgment motions because the trial court denied the motion as to count one and ruled that plaintiff had sufficient evidence on that count. Epstein also cannot be deemed to have litigated the matter in bad faith after the court's summary judgment ruling because the trial court had permitted the matter to proceed to trial.
The trial court may have been correct that there was insufficient evidence for plaintiff to prevail on its claims. The record developed at trial may ultimately have justified entry of a judgment for defendants. That does not mean, however, that Epstein violated the frivolous litigation rule by filing the complaint, refusing to withdraw the pleading or taking the matter to trial.
As we stated previously, a pleading will not be considered frivolous for purposes of imposing sanctions under Rule 1:4-8 unless the pleading as a whole is frivolous. Sanctions are not warranted if an attorney has a reasonable and good faith belief in the claims being asserted. In our judgment, a pleading cannot be deemed frivolous as a whole nor can an attorney be deemed to have litigated a matter in bad faith where, as in this case, the trial court denies summary judgment on at least one count in the complaint and allows the matter to proceed to trial. We therefore conclude that the trial court erred by finding that Epstein violated Rule 1:4-8.
In its cross-appeal, Zan argues that additional counsel fees and costs should have been awarded for the matter after March 28, 2008, and for the Rule 1:4-8 motion. In light of our decision that no sanctions should have been imposed, these issues are moot.
The order of July 18, 2008, imposing sanctions is reversed and the cross-appeal is dismissed.