**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3970-17T3

IN THE MATTER OF THE ESTATE
OF SHELDON BIBER,

     Deceased.

_____

Argued May 15, 2019 – Decided June 11, 2019

Before Judges Koblitz, Currier and Mayer.

On appeal from Superior Court of New Jersey, Chancery Division, Morris County, Docket No. P-0350-2009.

Frederick W. Claybrook, Jr., of the District of Columbia Bar, admitted pro hac vice, argued the cause for appellant/cross-respondent Joshua Biber (Arthur C. Hopkins and Frederick W. Claybrook, Jr., attorneys; Frederick W. Claybrook, Jr. and Arthur C. Hopkins, Jr., on the briefs).

Jonathan F. Donath argued the cause for respondent/cross-appellant Peter Biber (Coughlin Duffy LLP, attorneys; Jason A. Meisner and Jonathan F. Donath, of counsel and on the briefs; Michael A. Spizzuco, Jr., on the briefs).

PER CURIAM

Appellant Joshua Biber[1] appeals from a December 20, 2016 order denying his cross-motion for summary judgment as moot and granting the motion for summary judgment filed on behalf of respondent Peter Biber. In addition, Joshua appeals from a March 29, 2018 order dismissing his objections to Peter's formal accounting in the Estate of Sheldon Biber (Estate). Peter cross-appeals from the March 29, 2018 order because the probate court did not expressly rule on his request for counsel fees. We affirm the challenged orders on appeal and cross-appeal.

Peter and his brother Sheldon Biber are the only children of Anna Biber.[2] Anna owned a home in Morristown, where she lived with Sheldon, until she moved into a nursing home. In 1994, when Anna's health began to decline, Peter was appointed her guardian. In 1998, Anna's healthcare expenses increased significantly. As a result, Peter and Sheldon agreed that Sheldon would take title to Anna's house for Medicaid planning purposes. On July 31, 1998, Medicaid "vetted the transaction and approved the decision to transfer the

---

[1] Because appellant and respondent share the same last name, we refer to the parties by their first names. No disrespect is intended.

[2] Joshua is Sheldon's only child.

A-3970-17T3

property" to Sheldon.[3] Anna was deemed Medicaid eligible effective June 1, 1998.

In 1998, Peter sought to be compensated for payment from his own funds for Anna's healthcare costs and other expenses related to the house. To accomplish that objective, on April 3, 1998, Peter executed a mortgage on the house.[4] The mortgage was between Anna, signed by Peter as Anna's guardian, and Peter in his personal capacity. The mortgage secured a "loan" of $30,000 due upon the sale of the house or Sheldon's death, whichever occurred first. In the event Peter made any repairs or incurred other expenses related to the house, the mortgage provided the cost would be added to the principal due under the mortgage.

On April 3, 1998, Sheldon signed a deed, obtaining title to the house. The deed stated the conveyance of the property was subject to the April 3, 1998 mortgage.

Anna died in 2000. Sheldon continued living in the house after Anna's death. From 1998 until Sheldon's death in 2008, Peter paid all expenses related

---

[3] Joshua conceded that the transfer of the house to his father "was both reasonable and necessary" under the "'caretaker exception' of the Medicaid law."

[4] The mortgage was recorded in June 1998.

A-3970-17T3

to the house, including utilities and property taxes.  Peter kept records of the expenses related to the house.

In February 2009, Peter was appointed as the Estate's administrator.  The Estate's only asset was the house and Peter was the Estate's only creditor.  As of 2009, Joshua knew Peter had a lien against the house and that the lien represented expenses incurred by Peter related to Anna and Sheldon and maintaining the house.

After his appointment as the Estate's administrator, Peter spent $45,000 to repair the house because Sheldon neglected the home while he lived there.  Peter tried to sell the house for $365,000.  Due to the condition of the home, Peter sold the house for the best offer, $295,000.  Peter notified Joshua that he planned to take $165,000 from the proceeds of the sale of the house to repay himself for the expenses related to Anna and Sheldon and maintenance of the house.

Peter offered to provide Joshua with an informal accounting of his expenses.  Joshua responded that he intended to seek to void the mortgage, claiming Peter's execution of the mortgage was a breach of his fiduciary duties to Anna.

In March 2012, Joshua filed a verified complaint to compel an Estate accounting.  Four years passed without any resolution of the Estate or the filing

4

of an accounting. In May 2016, Peter filed a summary judgment motion seeking to dismiss Joshua's complaint, and Joshua filed a cross-motion for partial summary judgment seeking to void the mortgage.

In December 2016, the probate court dismissed Joshua's complaint, finding that, while the mortgage was "facially suspect,"[5] Joshua lacked standing to contest the mortgage. The judge rejected Joshua's argument that N.J.S.A. 3B:14-36 precluded Peter's transfer of Anna's property to Sheldon. The judge explained any "sale or encumbrance to the fiduciary, his spouse, agent or attorney . . . is voidable by any person interested in the estate . . . ." N.J.S.A. 3B:14-36. The judge found the transfer of the house in 1998 was not to Peter, or his spouse, agent or attorney, but was to Peter's brother, Sheldon. Under the statute, only Sheldon had standing to void the transaction. The probate judge noted that Sheldon "did not seek to void the mortgage – in fact, he did the exact opposite, he enjoyed the benefits of a transaction that his son [Joshua] now seeks to disavow and void."

The probate judge found "Medicaid vetted the transaction and approved the decision to transfer the property, in effect, legally ratifying [the mortgage

---

[5] The probate judge noted that Rule 4:94-1 requires court approval of real estate transactions involving an incapacitated person. Neither the mortgage nor deed were court approved in this case.

and deed]." The judge also found the mortgage and deed were "factually ratified by [Sheldon], who was the undisputed beneficiary of this home for over [ten] years." The judge concluded, "there is nothing in the record to suggest that [Sheldon] ever complained of, or filed legal action, to upset this transaction" for the ten years Sheldon lived in the home until his death. The judge declined to "open a 'Pandora's Box' where beneficiaries challenge estate planning and guardianship decisions decades after the fact, with no evidence other than general unsubstantiated claims that those decisions were unlawful."

Even though the probate judge granted Peter's motion for summary judgment, Joshua received a partial victory as Peter was ordered to provide an updated formal accounting. Joshua was allowed to file objections to the expenses identified in Peter's formal accounting.

Peter provided an updated formal accounting, including attorney's fees associated with the probate action, and Joshua filed objections to that accounting. Joshua's objections incorporated his earlier objections to Peter's informal accounting and renewed his challenge to the validity of the mortgage.

On March 29, 2018, the probate judge dismissed Joshua's objections to Peter's formal accounting, finding Peter provided sufficient evidence to support the expenses. The judge found "credible that Peter . . . incurred a mountain of

expenses in caring for his mother, brother and their respective Estates during and after their respective lifetimes." In addition, the judge concluded "there is sufficient evidence to support the accounting and expenses taken by Peter . . . ." The judge stated he would "not countenance or support asking [Peter to] recreate his records for over twenty years . . . ." The judge also rejected Joshua's attempt to relitigate validity of the mortgage and the expenses that Peter incurred related to Anna and maintaining Sheldon in the Morristown home because the court addressed and rejected those same arguments in the December 16, 2016 order. The judge concluded, "[t]his matter has been litigated for no apparent reason other than [Joshua's] displeasure that he was de facto disinherited by reason of [his] father's insolvency."[6]

On appeal, Joshua argues he has standing to contest the mortgage. Joshua also contends Peter's formal accounting of certain expenses failed for lack of evidentiary support. Joshua further asserts Peter should not have been allowed to charge legal fees related to the validity of the mortgage to the Estate.

We review a trial court's grant or denial of summary judgment de novo, applying the same standard as the trial court. <u>Henry v. N.J. Dep't of Human</u>

_____

[6] Between the legal fees incurred in the probate litigation and the $165,000 in Estate and other expenses incurred by Peter, the Estate was depleted.

<u>Servs.</u>, 204 N.J. 320, 330 (2010). We must determine whether a genuine issue of material fact exists, entitling the moving party to judgment as a matter of law. <u>N.J. Dep't of Envtl. Prot. v. Alloway Twp.</u>, 438 N.J. Super. 501, 507 (App. Div. 2015). We defer to a trial court's factual findings that are supported by substantial, credible evidence. <u>Gnall v. Gnall</u>, 222 N.J. 414, 428 (2015); <u>Rova Farms Resort v. Inv'rs Ins. Co.</u>, 65 N.J. 474, 483-84 (1974).

The probate court properly concluded Joshua lacked standing to void the mortgage as a matter of law because Joshua had no interest in Anna's estate during her lifetime. N.J.S.A. 3B:14-36 provides:

> Any sale or encumbrance to the fiduciary, his spouse, agent or attorney, or any corporation or trust in which he has a substantial beneficial interest, or any transaction which is affected by a substantial conflict of interest on the part of the fiduciary, is voidable by any person interested in the estate except one who has consented after fair disclosure, unless:
>
> a. The will or a contract entered into by the decedent expressly authorized the transaction; or
>
> b. The transaction is approved by the court after notice to interested persons.

The statute allows only persons with an interest in an estate to void self-dealing encumbrances by a fiduciary. In this case, the only person with an interest in Anna's estate was Sheldon, and he never sought to void the transfer

8

of the house. To the contrary, Sheldon benefitted for ten years by living in the house without contributing to any of its expenses. In addition, the transfer of the home was to Sheldon, not to Peter, his spouse, agent, or his attorney, and there was no conflict of interest under the statute.

We next consider Joshua's challenge to the probate court's approval of Estate expenses claimed by Peter, totaling nearly $165,000. The expenses included property taxes, maintenance, repairs, and utilities for the house. The mortgage expressly provided that repairs for the property and payment of liens, taxes, and insurance would be added to the principal amount of the mortgage, bear interest at the same rate, and be repaid to Peter on demand. In accordance with the terms of the mortgage, Peter's expenses related to the house were proper.

Regarding expenses incurred by Peter in caring for Anna, including her healthcare and funeral expenses, Joshua lacked standing to contest those expenses eighteen years after Anna's death. As for expenses incurred on behalf of Sheldon, his primary asset was the house he acquired in 1998. Peter provided documentation, which the probate court found "sufficient," in support of the expenses incurred by Peter that allowed Sheldon to remain in the house despite Sheldon's lack of income to pay those expenses.

9

Peter's payment of property taxes and other expenses related to the house was unrefuted. Joshua offered no evidence to the contrary. Joshua never sought to depose Peter. Nor did Joshua serve any subpoenas seeking information to contradict Peter's proffered expenses. Joshua simply contended, without any foundation, the claimed expenses were not incurred by Peter. Joshua's assertion overlooked the fact that Sheldon had insufficient income to pay property taxes, utilities, or other expenses associated with his living in the house. Absent any evidence to dispute Peter's payment of such expenses, the probate court properly rejected Joshua's objections to all expenses.

Moreover, the probate judge found Peter's formal accounting, with attached documentation, had a sufficient evidentiary basis. The probate judge rejected Joshua's demand that Peter "recreate his records for over twenty years." More importantly, many of the records substantiating the expenses Peter incurred were no longer available due to the significant passage of time and Joshua's delay in challenging the expenses.

Joshua also challenges legal fees Peter charged to the Estate, arguing the fees were unrelated to the Estate's administration and were attributable to Peter's collection of his debt from the Estate. Peter is entitled to attorneys' fees under the mortgage, including fees incurred in defending Joshua's legal challenge to

A-3970-17T3

the validity of the mortgage. The probate judge properly approved Peter's legal fees and costs in defending against Joshua's challenge to the mortgage in accordance with the terms of the mortgage.

We next consider Peter's cross-appeal. Peter requested attorney's fees pursuant to N.J.S.A. 2A:15-59.1 and Rule 1:4-8, claiming Joshua pursued the probate litigation without basis in law or fact.[7]

The grant or denial of attorney's fees as a sanction for frivolous litigation lies within the trial court's sound discretion. Tagayun v. AmeriChoice of N.J., Inc., 446 N.J. Super. 570, 577 (App. Div. 2016). Frivolous litigation includes the submission of pleadings "in bad faith, solely for the purpose of harassment, delay or malicious injury," or pleadings that lack "any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." N.J.S.A. 2A:15-59.1(b)(1), (2); Tagayun, 446 N.J. Super. at 577-78. "Sanctions are not to be issued lightly; they are reserved for particular instances where a party's pleading is found to be 'completely untenable,' or where 'no rational argument can be advanced in its support[.]'" McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 499 (App. Div.

_____

[7] During the appellate oral argument, counsel clarified that Peter's request for counsel fees and costs was limited to the costs and fees incurred after the issuance of the December 20, 2016 order.

11

2011) (alteration in original) (quoting <u>United Hearts, L.L.C. v. Zahabian</u>, 407 N.J. Super. 379, 389 (App. Div. 2009)).

Here, Joshua's objections to Peter's accounting claims did not lack rational basis in law or fact. Nor did the objections evince an intent to harass, delay, or injure. Joshua, as an heir and beneficiary of the Estate, had the right to examine Peter's use of Estate funds to pay expenses. Although not specifically addressed by the probate court, the judge inferentially concluded Joshua's objections were not frivolous as he expressly required Peter to provide Joshua with an updated formal accounting and allowed Joshua to file objections to that accounting. Having considered the record, the probate judge did not abuse his discretion by declining to address Peter's request for counsel fees under the circumstances.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3970-17T3