**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2963-21

SUZANN FLAMM, individually
and on behalf of MORNING
DOVE INN & SPA, LLC,

     Plaintiff-Appellant/
     Cross-Respondent,

v.

JEFFREY YOUNG,

     Defendant,

and

KIMBERLY YOUNG,

     Defendant-Respondent/
     Cross-Appellant.

_____

Argued November 28, 2023 – Decided January 31, 2024

Before Judges Gooden Brown and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1547-19.

David Joshua Rubenstein argued the cause for appellant/cross-respondent.

Matthew R. Goode argued the cause for respondent/cross-appellant Kimberly Young (Arbus, Maybruch & Goode, LLC, attorneys; Matthew R. Goode, on the briefs).

PER CURIAM

In this appeal, the parties challenge two post-trial orders. Plaintiff Suzann Flamm, individually and on behalf of the now-dissolved Morning Dove Inn & Spa, LLC (collectively plaintiff), argues the court incorrectly denied her application for attorney's fees after the jury concluded defendant Kimberly Young failed to repay an August 2, 2011 promissory note ("Note") and awarded her $190,000.[1] For her part, defendant cross-appeals from an order that denied her motion in which she requested the court deem the promissory note a security agreement, and accordingly credit the parties' respective equity interests in the dissolved LLC's assets against the $190,000 judgment. After considering the parties' contentions in light of the record and applicable law, we affirm both orders.

---

[1] The jury rejected plaintiff's claims against defendant Jeffrey Young, a decision she does not challenge before us. Jeffrey Young has not participated in this appeal.

A-2963-21

I.

Plaintiff is defendant Kimberly Young's mother. In 2011, plaintiff and defendants, then married, formed Morning Dove, executed an operating agreement and later obtained a loan which they used to purchase and operate an Inn in Belmar. Under the operating agreement, plaintiff and defendants each had an approximate one-third equity interest in Morning Dove.

A year later, in 2012, plaintiff filed a complaint against defendants seeking to dissolve Morning Dove and distribute its assets. The parties agreed to arbitrate the dispute, resulting in the arbitrator determining Morning Dove should be dissolved and all funds distributed in accordance with the parties' respective capital contributions. Following the arbitrator's decision, the court appointed a receiver to sell the Inn. The receiver sold the Inn in 2018 and plaintiff's complaint was subsequently dismissed. The record does not reveal if that dismissal was with or without prejudice.

After the sale, in May 2018, plaintiff filed a motion seeking a priority distribution of Morning Dove's surplus funds. She argued defendant executed the Note, and plaintiff was therefore a creditor of the LLC entitled to be repaid prior to the distribution of assets. The Note, signed by "Kimberly Young," states:

3

A-2963-21

> I Kimberly Spinelli-Young owe Suzan [sic] Flamm 50,000.00 from the money of Carmela Jerino. I will add this to the amount me and Jeff Young borrowed from My mom to buy the Inn at 204 5th Ave Belmar NJ which is known as the Morning Dove Inn & Spa LLC. The total that Jeff & I will owe her is $240,000.00. She will stay on as partner until we can give her back her loan given to us for the full amount.

The court denied plaintiff's motion and ordered Morning Dove dissolved. Additionally, in 2019, the court also denied plaintiff's motion to amend her 2012 complaint and set a trial date because the matter was previously dismissed, but stated should plaintiff file a new complaint, it would not deem the newly filed complaint precluded by the entire controversy doctrine.

In April 2019, plaintiff commenced this action against defendants alleging fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, conversion, and tortious interference. Plaintiff also reasserted her claim she was a creditor of Morning Dove, entitled to repayment upon the LLC's dissolution, and prior to a distribution of any assets.

In March 2020, plaintiff moved for summary judgment. The court denied plaintiff's application and the matter was sent to non-binding arbitration where the arbitrator awarded plaintiff $168,329.33. Defendant subsequently filed for a trial de novo.

A-2963-21

On September 30, 2020, defendant filed a motion to reopen discovery, add affirmative defenses, and assert a counterclaim. In support, she submitted a certification in which she attested the Note was a forgery. She further claimed the first time she saw the Note was when plaintiff filed her March 2020 summary judgment motion. Defendant's counsel also stated additional discovery was necessary so that she could consider retaining "a handwriting expert," and further to complete depositions "after all documents [were] received and reviewed."

The court granted defendant's motion. Defendant later filed an answer in which she asserted an affirmative defense that the Note was a forgery, as well as a counterclaim asserting plaintiff breached a contract related to the purchase and ownership of Morning Dove. Specifically, defendant alleged plaintiff approached her and Jeffrey Young and requested their assistance in opening the Inn. Defendant claimed plaintiff "promised" if defendants co-signed a loan and advanced closing costs, plaintiff would thereafter refinance the loan and repay defendants using funds from the sale of plaintiff's home. Until that time, according to the counterclaim, defendants would each retain a one-third equity interest in the LLC formed to operate the Inn, and upon repayment, relinquish

A-2963-21

such equity interests to plaintiff. Defendant claimed plaintiff breached this contract by failing to refinance the loan or repay defendants.

On March 14, 2021, plaintiff's counsel sent defendant's counsel a "Frivolous Pleading Letter," pursuant to Rule 1:4-8, and requested defendant withdraw her counterclaim as it was barred by the statute of limitations and statute of frauds, and otherwise failed to state a claim. Plaintiff filed a motion to dismiss defendant's counterclaim on the same basis, which the court denied.

Defendant thereafter filed a motion for summary judgment arguing, among other things, plaintiff was barred from pursuing her breach of contract claim as it was barred by the statute of limitations. Plaintiff filed a cross-motion for summary judgment again seeking to dismiss defendant's counterclaim.

The court granted defendant's motion as to the claims of fraud, intentional infliction of emotional distress, conversion, and tortious interference but denied her motion with respect to plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing claims. The court found plaintiff was "not a creditor of the LLC," and was "not entitled to be 'paid first' upon dissolution of the LLC." The court also denied plaintiff's request to dismiss defendant's counterclaim.

A-2963-21

On May 12, 2021, plaintiff's counsel sent defendant's counsel a second "Frivolous Pleading Letter" requesting defendant withdraw her September 30, 2020 certification. Counsel maintained defendant's claim her signature on the Note was forged was untruthful and frivolous. Plaintiff's counsel also stated defendant falsely "insisted that she would submit an [e]xpert [r]eport," which apparently referred to defense counsel's statement regarding the possibility of retaining a handwriting expert.

The matter proceeded to a jury trial, where defendant testified her signature on the Note was forged and maintained she did not see the Note until plaintiff commenced the current action, which defendant acknowledged was in 2019. As noted, in her September 2020 certification, however, defendant stated the first time she saw the Note was when plaintiff filed her motion for summary judgment in March 2020.

During cross-examination, plaintiff's counsel confronted defendant with email exchanges from August 2016 among plaintiff's counsel, defendant's prior counsel, and defendant. The related testimony revealed a copy of the Note was attached to the email exchange as part of plaintiff's motion to enforce litigant's rights in the parties' previously dismissed lawsuit. The following colloquy ensued:

[Counsel]: Okay. Ms. Young, isn't it true that earlier, right before I showed you this document, you said that the first time you ever saw this document was in 2019. That was a lie, correct?

[Defendant]: I could have been mistaken . . .

. . . .

[Counsel]: And so, when you testified earlier that 2019 was the first time that Suzann Flamm ever demanded the money back on this loan, that was a lie, correct?

[Defendant]: I could have been mistaken.

At the close of defendant's case, plaintiff moved for a directed verdict on defendant's counterclaim contending defendant failed to establish any damages. Defendant also moved for a directed verdict again arguing plaintiff's complaint was barred by the applicable statute of limitations.

The court reserved decision on both motions, allowed for supplemental briefing, and submitted the case to the jury. As noted, the jury found defendant Kimberly Young entered into, and breached, the Note and awarded plaintiff $190,000 in damages, and also found Jeffrey Young not liable. Additionally, the jury found defendant failed to properly dissolve Morning Dove and awarded the LLC $3,000 for the associated costs. Finally, the jury rejected defendant's counterclaim.

A-2963-21

After the verdict, the court issued an order and accompanying written opinion with respect to the parties' directed verdict applications. It denied defendant's motion and also denied "several non-jury equitable claims" plaintiff presented to the court "during and after trial."

In denying defendant's motion, the court rejected her argument N.J.S.A. 2A:14-1 governed the Note and a six-year statute of limitations began to run the day the Note was issued and expired in August 2017. The court instead found the Note was a negotiable instrument under N.J.S.A. 12A:3-118, and the applicable statute of limitations expired either six years from a demand for payment or ten years from execution of the Note if no demand was made. Because plaintiff commenced this action in April 2019, the court found under either circumstance, plaintiff's claim was not time-barred. The court accordingly entered final judgment in favor of plaintiff and against defendant in the amount of $190,000, and also entered final judgment in favor of plaintiff with respect to defendant's counterclaim.

Subsequently, plaintiff filed a motion for attorney's fees pursuant to Rule 1:4-8, arguing defendant's September 30, 2020 certification and counterclaim for breach of contract were frivolous. Specifically, plaintiff contended defendant was untruthful in her certification when she claimed her signature on

the Note was forged and that the first time she saw the Note was plaintiff's March 2020 motion for summary judgment.

Plaintiff explained defendant's untruthfulness was evident during cross-examination when plaintiff confronted defendant with the August 2016 email exchanges. Plaintiff argued defendant "admitted she had been caught in a lie and admitted that she knew about this promissory note at least as early as 2016." Further, plaintiff contended defendant's certification was submitted solely to delay the trial to add forgery as an affirmative defense, consult an expert, and depose plaintiff, but when granted an extension, she neither deposed plaintiff nor submitted an expert report.

With respect to defendant's counterclaim, plaintiff argued it was frivolous because defendant did not "submit any documents, exhibits, evidence, [or] any proof of damages," and because the counterclaim did not "provide for a written agreement." Plaintiff also stated the jury's finding was "essentially word for word" consistent with plaintiff's March 14, 2021 "Frivolous Pleading Letter." Plaintiff contended she incurred $55,711 in attorney's fees after September 2020 to April 2022 litigating defendant's claims.

A-2963-21

The court denied plaintiff's motion. The court found the reasons stated in plaintiff's letters provided "absolutely no basis" for the court to conclude defendant's filings were frivolous.

In considering plaintiff's May 12, 2021 letter and defendant's September 30, 2020 certification, the court explained the statements related to taking depositions and retaining an expert were made by defendant's attorney, not defendant, and choosing not to present an expert or depose plaintiff were strategic decisions. With respect to defendant's attestation in her certification the Note was a forgery and the first time she saw the Note was when plaintiff filed her March 2020 motion for summary judgment, the court rejected plaintiff's characterization of defendant's trial testimony. The court explained defendant admitted at trial the Note was attached to an August 2016 email, but "at no point in time in this trial did [defendant] indicate that she lied in any pleading that she signed or in any pleading that she provided to the court."

As the court explained, "[t]he big issue in this case was whether . . . [plaintiff] had loaned money, $190,000, to [defendants], or whether she was a partner and that was her stake in the LLC." The court noted although the jury found defendant entered into the Note with plaintiff, it rejected plaintiff's claim defendant's forgery defense was frivolous based solely on the verdict.

11

Similarly, with respect to defendant's counterclaim, the court found, contrary to plaintiff's argument, neither the court nor the jury made any findings that defendant's counterclaim was barred by either the statute of limitations or the statute of frauds. Next, the court rejected plaintiff's assertion defendant's counterclaim failed to state a claim because defendant failed to present any evidence a contract existed between the parties. Specifically, the court stated, "of course there was evidence" presented in support of defendant's counterclaim, namely, defendant's testimony, "which the jury could believe or not believe."

Thereafter, the court-appointed receiver filed a proposed order distributing a one-third share of $49,127.27 to each plaintiff, defendant, and Jeffrey Young, with defendant also contributing $1,000 to each plaintiff and Jeffrey Young, consistent with the jury's verdict awarding Morning Dove damages for defendant's failure to properly dissolve the LLC. Additionally, the order stated, "the share of Kimberly Young shall be distributed to Suzann[] Flamm in partial satisfaction of the Judgment entered in this matter on February 22, 2022 against Kimberly Young and in favor of Suzann[] Flamm."

Defendant filed a motion objecting to the receiver's distribution of assets. Defendant argued because the court found the Note to be a negotiable instrument governed by the UCC, the Note should be treated as a security interest.

12

Defendant contended the parties' equity interests in Morning Dove, including plaintiff's, secured the loan from plaintiff, and the distribution of Morning Dove's assets to both defendant and plaintiff should be credited towards plaintiff's judgment.

On the merits, the court found under the terms of the Note, plaintiff retained an ownership interest in the LLC until the Note was repaid. The court further found under the LLC's operating agreement, plaintiff and defendants each contributed $100 in capital entitling each to a one-third equity interest in Morning Dove.

The operating agreement also provided, "net capital proceeds shall be distributed" first to the payment of debts and liabilities of the company, then to "the interest holders in proportion to their adjusted capital contributions." With respect to dissolution, the operating agreement directed "the [g]eneral [m]anager shall wind up [the LLC's] affairs," and distribute assets in the following priority: first "to creditors, including [m]embers and managers who are creditors;" second "to [i]nterest [h]olders and former [m]embers who have resigned, unpaid distributions to which they become entitled prior to dissolution or resignation as applicable;" and third "to [i]nterest [h]olders in proportion to their remaining

13

[c]apital [a]ccount balances after taking into account all contributions, distributions and allocations for all periods."

The court also noted it previously found plaintiff not to be a creditor of the LLC, but rather a potential creditor of defendants. As such, the court found plaintiff to be a member of the LLC entitled to distribution in proportion to her one-third equity interest. The court stated if there were not an operating agreement, defendant "might have an argument" with respect to the Note's status as a security interest. The court noted, however, because the operating agreement entitled plaintiff to one-third of the LLC's assets, it would not credit plaintiff's share towards the judgment against defendant. The court entered an order adopting the receiver's proposed distribution and this appeal followed.

## II.

Before us, plaintiff asserts the court erred in denying her motion for attorney's fees pursuant to Rule 1:4-8. We review a trial court's decision to award attorney's fees pursuant to Rule 1:4-8 under the abuse of discretion standard. McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 498 (App. Div. 2011). We discern no abuse of the court's discretion in this case as we are satisfied the court properly considered the underlying facts and Rule 1:4-8(a)(1)-(4) in denying plaintiff's motion for attorney's fees.

"Sanctions for frivolous litigation against a party are governed by the Frivolous Litigation Statute, N.J.S.A. 2A:15-59.1." Bove v. AkPharma, Inc., 460 N.J. Super. 123, 147 (App. Div. 2019). Further, Rule 1:4-8 "authoriz[es] similar fee-shifting consequences as to frivolous litigation conduct by attorneys." Ibid. N.J.S.A. 2A:15-59.1(b) states:

> In order to find that a complaint, counterclaim, cross-claim or defense of the nonprevailing party was frivolous, the judge shall find on the basis of the pleadings, discovery, or the evidence presented that either:
>
> (1) The complaint, counterclaim, cross-claim or defense was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or
>
> (2) The nonprevailing party knew, or should have known, that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.
>
> [N.J.S.A. 2A:15-59.1(b).]

Additionally, when an attorney or pro se party signs, files, or advocates a "pleading, written motion, or other paper," that attorney or pro se party "certifies that to the best of [their] knowledge, information, and belief":

(1) [T]he paper is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the factual allegations have evidentiary support or, as to specifically identified allegations, they are either likely to have evidentiary support or they will be withdrawn or corrected if reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support; and

(4) the denials of factual allegations are warranted on the evidence or, as to specifically identified denials, they are reasonably based on a lack of information or belief or they will be withdrawn or corrected if a reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support.

[R. 1:4-8(a)(1)-(4).]

If an attorney files papers with the court contrary to Rule 1:4-8(a) and fails to withdraw the papers within the twenty-eight-day safe harbor period following a demand for withdrawal, the court may impose sanctions. United Hearts, L.L.C. v. Zahabian, 407 N.J. Super. 379, 389 (App. Div. 2009). However, "[t]he nature of conduct warranting sanction under Rule 1:4-8 and under the statute has been strictly construed," Tagayun v. AmeriChoice of N.J., Inc., 446 N.J.

Super. 570, 580 (App. Div. 2016), and "[a] claim will be deemed frivolous or groundless when no rational argument can be advanced in its support, when it is not supported by any credible evidence, when a reasonable person could not have expected its success, or when it is completely untenable." Belfer v. Merling, 322 N.J. Super. 124, 144 (App. Div. 1999).

Indeed, "[t]he term frivolous should not be employed broadly or it could limit access to the court system." Tagayun, 446 N.J. Super. at 580. Courts should award frivolous litigation sanctions only in exceptional cases. See Iannone v. McHale, 245 N.J. Super. 17, 28 (App. Div. 1990). "Where a party has [a] reasonable and good faith belief in the merit of the cause, attorney's fees will not be awarded." United Hearts, 407 N.J. Super. at 389 (quoting First Atl. Fed. Credit Union v. Perez, 391 N.J. Super. 419, 432 (App. Div. 2007)). Additionally, the party seeking fees bears the burden of proving the non-prevailing party acted in bad faith. Ferolito v. Park Hill Ass'n, 408 N.J. Super. 401, 408 (App. Div. 2009).

With respect to plaintiff's argument defendant's counterclaim was frivolous because it was barred by the statute of limitations and statute of frauds, we are satisfied the court did not abuse its discretion in rejecting both arguments as bases for finding the claim frivolous. As the court correctly stated, "no

finding [was] made that the counterclaim was barred by the statute of limitations or . . . by the statute of frauds." Indeed, neither the court nor the jury found defendant's counterclaim was barred by the statute of limitations or statute of frauds as the applicability of the statute of limitations or statute of frauds was not an issue presented to the jury.

We are similarly unpersuaded by plaintiff's argument that defendant's counterclaim failed to state a claim. The court correctly noted a written agreement is not required for a party to recover on a breach of contract claim, and rejected plaintiff's contention there was no evidence of any contract as defendant's testimony constituted such evidence which, as the court correctly explained, "the jury could believe or not believe."

We also disagree with plaintiff's argument the court erred in denying her motion based on the defendant's certification. We discern no abuse of the court's discretion in rejecting plaintiff's contention defendant's certification was frivolous because defendant did not produce a handwriting expert or depose plaintiff. As the court stated, defendant's counsel, not defendant, made statements referring to an expert report and depositions, and defendant's certification does not refer to either. In any event, as the court noted, there existed possible strategic reasons defendant's counsel did not retain an expert or

depose plaintiff, and we are not persuaded the non-occurrence of those events rendered defendant's certification or her counsel's statements frivolous.

We are also satisfied the court did not abuse its discretion when it concluded plaintiff was not entitled to frivolous litigation fees based on her statement in her certification as to when she first saw the Note, or that the Note was a forgery. At trial, plaintiff impeached defendant with a 2016 email sent to defendant with the Note attached, and defendant stated she "could have been mistaken" as to when she first saw the Note. Although that effective impeachment likely contributed to the jury's verdict, it does not render the certification frivolous.

Further, with respect to defendant's attestation the Note was a forgery, defendant maintained the Note was forged since the filing of her certification, including during cross-examination, and never disavowed her attestation. As the court stated, "at no point in time in this trial did [defendant] indicate that she lied in any pleading that she signed or in any testimony she provided to the court."

Similarly, the court correctly rejected plaintiff's argument the jury "found" defendant's claims to be frivolous. The jury returned a verdict in favor of plaintiff with respect to plaintiff's breach of contract claim and defendant's

counterclaim, but failing to prevail in litigation does not necessarily make a party's claim frivolous. See, e.g., Bove, 460 N.J. Super. at 152 ("[A] grant of a motion for summary judgment in favor of a [prevailing party], without more, does not support a finding that the [non-prevailing party] filed or pursued the claim in bad faith." (quoting Ferolito v. Park Hill Ass'n, 408 N.J. Super. 401, 408 (App. Div. 2009))).

## III.

In her cross-appeal, defendant argues the trial court erred in failing to treat the Note as a security interest under the UCC and the parties' equity interests in Morning Dove as collateral securing the loan. Defendant argues the court's error resulted in plaintiff receiving a $50,127.28 windfall. We find insufficient merit in defendant's argument to warrant extensive discussion in a written opinion. R. 2:11–3(e)(1)(E). We also note defendant does not challenge the court's post-verdict order in which it found plaintiff's breach of contract claim timely because the Note was a negotiable instrument governed by the UCC and subject to a statute of limitations of either six years from a demand for payment or ten years from execution. As such, we do not address the substance of that finding. To briefly amplify our decision, we add only the following.

N.J.S.A 12A:1-201(b)(35) defines a security interest as "an interest in personal property or fixtures which secures payment or performance of an obligation." N.J.S.A. 12A:9-203 governs the attachment and enforceability of security interests and states, "[a] security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral." N.J.S.A. 12A:9-203(a). A security interest is enforceable against the debtor and third parties only if:

(1) value has been given;

(2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and

(3) one of the following conditions is met:

(A) the debtor has authenticated a security agreement that provides a description of the collateral and, if the security interest covers timber to be cut, a description of the land concerned;

(B) the collateral is not a certificated security and is in the possession of the secured party under 12A:9-313 pursuant to the debtor's security agreement;

(C) the collateral is a certificated security in registered form and the security certificate has been delivered to the secured party under 12A:8-301 pursuant to the debtor's security agreement; or

21

(D) the collateral is deposit accounts, electronic chattel paper, investment property, letter-of-credit rights, or electronic documents, and the secured party has control under 12A:7-106, 12A:9-104, 12A:9-105, 12A:9-106, or 12A:9-107 pursuant to the debtor's security agreement.

[N.J.S.A. 12A:9-203(b).]

The record simply does not support the argument the Note constituted a security interest because defendant has not met the statutory requirements to create an enforceable security interest outlined in N.J.S.A. 12A:9-203(b). Specifically, defendant did not have rights in plaintiff's equity interest of Morning Dove and could not create a security interest using that equity interest. Defendant cites no case or authority interpreting N.J.S.A. 12A:9-203(b) to allow a member of an LLC to create a security interest under such circumstances. We are satisfied the court's June 2, 2022 order properly distributed the LLC's assets, and correctly credited only defendant's share towards the $190,000 judgment.

To the extent we have not specifically addressed any of either party's arguments, it is because we have concluded they are of insufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2963-21