**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3205-18T1

EDWARD HAYES,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

RODNEY YOUMAN,

      Defendant-Respondent/
      Cross-Appellant,

and

THOMAS YOUMAN, a/k/a
THOMAS ELDEN YOUMAN
HENLY, YOUMAN & ABAD,
a law firm, YOUMAN & YOUMAN,
a law firm,

      Defendants.

_____

Argued January 27, 2020 – Decided April 23, 2020

Before Judges Sumners, Geiger and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-0786-17.

Mario A. Iavicoli argued the cause for appellant/cross-respondent.

Jeffrey S. Mandel argued the cause for respondent/cross-appellant.

PER CURIAM

Plaintiff Edward Hayes appeals from Law Division orders: (1) granting defendant Rodney Youman (Rodney)[1] summary judgment dismissing plaintiff's legal malpractice claim; (2) granting Rodney's oral motion in limine barring plaintiff's legal malpractice expert's report and testimony; and (3) dismissing plaintiff's remaining claims with prejudice for failure to prosecute. Rodney cross-appeals from an order denying his motion for frivolous litigation sanctions. We affirm.

I.

The Underlying Facts

This case arose from a fraudulent business scheme carried out in Ecuador against plaintiff, a Canadian citizen who resides in Ontario, resulting in the conversion of his funds that were earmarked for the purchase of investment properties in Ecuador. Viewing the facts in a light most favorable to plaintiff,

---

[1] We refer to defendants Rodney Youman and Thomas Youman by their first names to avoid confusion. We intend no disrespect in doing so.

the record establishes the following conduct by Thomas Youman (Thomas) and limited involvement of Rodney.

In 2008, plaintiff decided to purchase an apartment in Ecuador. He traveled to Salinas, Ecuador, where he spoke to real estate salesperson, Ivan Jaramillo. Jaramillo recommended that plaintiff retain Thomas for legal services related to the apartment purchase. It was later discovered that Ecuadorian public records do not list Thomas as a licensed attorney.

Plaintiff took Jaramillo's advice and began meeting with Thomas at the offices of Youman & Abad, located in Cuenca, Ecuador, which plaintiff believed was a law firm. Plaintiff visited the office on at least fifteen more occasions. According to plaintiff, Thomas "portrayed himself as a lawyer."

Youman & Abad Asesores Y Asociados Compania Limitada was created on November 16, 2006, by Rodney (190 shares), Thomas (10 shares), and Maria Jose Abad Pesantez (200 shares); it was incorporated in Ecuador.[2] A "Constitucion" was properly filed with the appropriate office of the Ecuadorian government by the firm. It described various objectives, one of which was "La asesoria legal," or "legal advice." Rodney claims Youman & Abad was a

---

[2] Although plaintiff has not briefed the issue, a "compania limitada" is apparently similar to a limited liability company (LLC) in New Jersey.

consulting firm, not a law firm. Plaintiff alleges that because Youman & Abad was not registered in the Public Cadastre of the Ecuadorian Stock Market, it was not authorized to create trust funds or make investments for the public.

A 2011 filing by Youman & Abad listed Thomas as "Presidente" and Maria Jose Abad as "Gerente General"; Rodney was not designated as a corporate officer. Youman & Abad was dissolved on February 22, 2013, for failure to comply with Ecuadorian corporate laws.

Plaintiff engaged Youman & Abad to conduct business in Ecuador. On April 23, 2008, while in Toronto, Canada, plaintiff executed a power of attorney allowing Thomas to purchase a specific property. Thomas then facilitated the purchase of an apartment after plaintiff sent him several $5000 wire transfers. Subsequently, while plaintiff was in Cuenca, he granted a general power of attorney to Thomas allowing him discretion to purchase real estate.

Following the purchase, plaintiff and Thomas continued their business relationship. Beginning on March 25, 2009, plaintiff wired various sums of money to a bank account that he believed was a trust account held by Youman & Abad. The money was intended to be invested in Ecuadorian real estate with Thomas acting as the trustee of the account.

4

This plan was reflected in trust fund certificates on Youman & Abad letterhead. The certificates stated that plaintiff's funds were "due to investments in the real estate and other business areas in Ecuador" and plaintiff "may withdraw them at any[]time under his written request." Thomas signed the document with the designation "Esq." Similar certificates were issued on June 10, 2011, October 27, 2011, January 27, 2012 and October 19, 2012.[3] However, as the trial court later found, while Thomas represented to plaintiff that the money would be deposited in the firm's trust account, the money was actually deposited in Thomas' personal account.

Eventually, plaintiff and Thomas began socializing and Thomas introduced him to the rest of his family, including Rodney. Plaintiff met Rodney only three times, all while in Ecuador. The first time was in either 2009 or 2010, at a restaurant in Cuenca; by this point plaintiff had already decided to do business with Thomas. The second time was at another restaurant, but they did not discuss any business together. The third time, plaintiff merely said "hello"

---

[3] The October 19, 2012 certificate is on Youman & Youman letterhead while the other four are on Youman & Abad letterhead. Rodney explains that "Youman & Youman is either a messenger company or a consulting company in Ecuador operated by Thomas and another Youman (Thomas' nephew)." Thomas signed three of the five certificates with the suffix "Esq."

to Rodney at the office of Youman & Abad. During their encounters, plaintiff never discussed business with Rodney.

Plaintiff subsequently loaned Thomas $40,000 on February 12, 2012 and $83,486 on February 6, 2013, with an interest rate of seven percent. On June 1, 2014, plaintiff made a final wire transfer to Thomas for $25,825. In sum, plaintiff wired a total of $324,471.50 to Thomas individually. None of the funds were remitted to Youman & Youman or Youman & Abad.

Following his last wire transfer to Thomas, plaintiff decided to sell the apartment he purchased, and Thomas' parents were interested in purchasing it. However, plaintiff discovered Thomas had quoted a higher price for the apartment than what plaintiff had expressed to him. Plaintiff viewed this as unethical and soon demanded that Thomas return all the wired funds and cancelled the power of attorney he gave to Thomas. Thomas agreed to do so but contended that he only owed plaintiff $29,330.39.

On June 21, 2016, plaintiff hired attorney Aaron Denker who sent a letter to Rodney demanding the return of $145,033.16, the amount plaintiff alleged was owed to him. Rodney responded that he was unfamiliar with plaintiff, unaware of any of plaintiff's money held in trust, had "no businesses or offices

A-3205-18T1

in Ecuador of any kind," and that his law firm in the United States "is not associated with any company or business in Ecuador."

Thomas has made various statements where he purports to be a lawyer. Likewise, Rodney has purportedly indicated that he has law offices in Ecuador (in online videos, newspaper articles, and business cards) and stated that Thomas was a lawyer in Ecuador. However, plaintiff never indicated in his testimony that these statements by Thomas or Rodney established his belief that Thomas was a lawyer or that Rodney was his attorney. Further, Rodney contends this evidence should not be considered because it was submitted by plaintiff after the discovery-end-date.

Rodney is an attorney admitted to practice in New Jersey and New York. Plaintiff last visited New Jersey around the year 2000, long before any events relevant to this matter transpired.

Plaintiff does not contend that Rodney personally provided investment advice to him. Nor does he contend that Rodney personally rendered legal services to plaintiff in Ecuador, New Jersey, or elsewhere. Rodney did not accept any retainer or payment from plaintiff. Rodney did not personally participate in plaintiff's transactions with Thomas. Plaintiff presents no

evidence that Rodney personally participated in the conversion of plaintiff's funds.

Plaintiff acknowledges that he never retained Rodney to perform legal services, advise him regarding Ecuadorian real estate law, or assist him in the purchase of property in Ecuador. Plaintiff never compensated Rodney in exchange for legal advice or services.

The only nexus to New Jersey is that Rodney is licensed to practice in New Jersey, where he posted certain information regarding Thomas on the internet that plaintiff claims was misleading. Even so, plaintiff does not claim that he relied on any misleading statements, advertisements, or internet postings by Rodney.

The Procedural History

Plaintiff filed a three-count complaint that alleged misrepresentation, fraud, and theft against Rodney, Thomas, Youman & Abad, and Youman & Youman (count one) (the fraud and conversion count); and professional negligence against Rodney (count two) (the legal malpractice count).[4]

---

[4] Count three incorporated counts one and two against fictious defendants who were never identified.

The fraud and conversion count alleged Rodney "was a member of the law firm of Youman & Abad, a legal entity in Cuenca, Ecuador" and a "member of the law firm of Youman, Madeo and Fasano, LLP" in Union City. Thomas and Rodney allegedly "worked together on legal matters in the law firm of Youman & Abad," "Youman & Youman," and "Youman, Madeo and Fasano, LLP."

Plaintiff averred that Thomas "was the agent, servant and/or employee of Rodney" and that Rodney "was principal, master and/or employer of Thomas" and is thereby "liable for the acts and omissions of Thomas."

The legal malpractice count alleged Rodney was negligent by the following acts and omissions: (a) failure to properly supervise Thomas as Rodney's agent, servant, or employee; (b) failure to properly investigate and conveying false facts to plaintiff's attorney after a demand for return of the funds was made to Rodney; (c) threatening plaintiff and plaintiff's attorney to deter them from pursuing plaintiff's rights; and (d) not controlling the use of the law firm's documents.

Defendants initially moved to dismiss the complaint on grounds of insufficient service of process, lack of subject matter jurisdiction, and forum non

A-3205-18T1

conveniens.[5] The trial court denied the motion. We denied defendants' motion for leave to appeal.

Rodney then filed an answer that asserted numerous affirmative defenses, including failure to state a cause of action, lack of subject matter jurisdiction, lack of personal jurisdiction due to insufficient service of process, and the absence of any damages attributable to any wrongful act or omission by Rodney. However, Rodney, did not respond to the allegations set forth in the legal malpractice count.

Rodney also moved to dismiss the complaint for failure to comply with the affidavit of merit statute, N.J.S.A. 2A:53A-27. The motion judge determined that an affidavit of merit was not required on a claim for fraud, citing Stoecker v. Echevarria, 408 N.J. Super. 597 (App. Div. 2009). Moreover, the judge also explained that plaintiff did not need to serve an affidavit of merit until defendant filed an answer to the legal malpractice count. Rodney then filed an amended answer responding to the legal malpractice count.

A default judgment was entered against the other defendants; they have not appealed from that judgment and are not participating in this appeal.

_____

[5] On appeal, Rodney does not brief the issue of forum non conveniens or lack of subject matter jurisdiction. During oral argument before this court, Rodney's counsel advised that Rodney abandoned those issues at the trial level.

Rodney subsequently moved for summary judgment. The motion judge granted summary judgment dismissing the legal malpractice claim but denied summary judgment as to fraud and conversion count.

In her written opinion, the motion judge found that plaintiff executed a power of attorney in favor of Thomas, permitting him "to perform real estate investment and transaction activities in the capacity of, as [p]laintiff understood, a lawyer." The judge then discussed the real estate investment enterprise, the funds wired by plaintiff to Thomas, and the trust fund certificates signed by Thomas with the suffix "Esq." The judge found several genuine issues of material fact precluded summary judgment as to the fraud and conversion count, including:

> (1) Youman & Abad's business practices as legal versus consulting, (2) Defendant Rodney's involvement with, and control over, Youman & Abad as an entity used to promote an alleged fraudulent scheme, (3) Defendant Rodney's acts of and benefit from holding out Defendant Thomas to be a lawyer, and (4) the connection between Defendant Rodney's law practices in New York and New Jersey and Youman & Abad.

As to the legal malpractice count, the judge found that plaintiff had not established that he had an attorney-client relationship with Rodney, as required by Jersita v. Murray, 185 N.J. 175 (2005).

11

The case was called for trial on February 4, 2019. Rodney made an oral motion in limine to bar plaintiff from calling his legal expert witness or introducing his expert report. The court granted the motion because the expert's report focused on whether Rodney committed legal malpractice under New Jersey law, a claim that had previously been dismissed on summary judgment. The judge concluded that the expert report "is not relevant or admissible" as to the remaining fraud or conversion claim, which was based on Thomas representing to plaintiff he was going to deposit plaintiff's money in the law firm's trust account but was actually deposited into Thomas' personal account.

Even without plaintiff's expert report and testimony, the trial judge found that plaintiff could proceed on the fraud and conversion count. However, when plaintiff's counsel asked the judge, "[d]o I have [enough] facts that could survive a motion at the end of my opening?" the judge responded, "[n]o." Plaintiff's counsel conceded he was likely unable to prove fraud by a preponderance of the evidence. The judge then stated:

> Understood. All right. So the plaintiff agrees to dismissal, but preserves the right to appeal the court's ruling of the granting of the in limine motion, barring the expert's report, which in essence causes him not to be able to lead to establish his cause of action.
>
> . . . .

A-3205-18T1

> I think . . . your best position on behalf of your client is to acknowledge the fact you can't proceed . . . and make your proofs in this case without this report and you're appealing a final judgment based upon the court barring this report.

Plaintiff followed that suggestion and elected not to proceed with the trial. As a result, the judge entered an order dismissing the case with prejudice for lack of prosecution.

Rodney then moved for frivolous pleading sanctions under Rule 1:4-8 and N.J.S.A. 2A:15-59.1, which the court denied because plaintiff survived summary judgment on the fraud and conversion count. In his written opinion, the judge noted that frivolous litigation sanctions "can only be awarded from the moment in time it becomes clear the litigation is frivolous."

The judge stated that the summary judgment motion judge "held that [p]laintiff had submitted sufficient evidence to proceed against [Rodney] on [the fraud and conversion count], which sounded in fraud," but not the legal malpractice count. The judge then reviewed the summary judgment judge's findings as to the fraud and conversion count. The judge determined that the finding that plaintiff presented sufficient evidence to proceed to trial on the fraud and conversion count "is sufficient to preclude a finding that [p]laintiff and his counsel filed or advanced a frivolous lawsuit," citing United Hearts,

A-3205-18T1

L.L.C. v. Zahabian, 407 N.J. Super. 379 (App. Div. 2009). Accordingly, the judge found there was no basis to award counsel fees or costs to Rodney.

The judge further found the litigation was not frivolous or brought in bad faith. He noted the YouTube videos and business cards indicating Thomas was ostensibly licensed to practice law in Ecuador. The judge further noted the use of company letterhead to defraud plaintiff. The judge then discussed potential liability based on aiding and abetting fraud.

This appeal followed. Plaintiff appeals from the order granting summary judgment dismissing the legal malpractice claim against Rodney and the ruling barring introduction of the report and testimony of plaintiff's expert. Rodney cross-appeals from the denial of frivolous litigation sanctions.

Plaintiff raises the following points on appeal:

> I. THE GRANT OF PARTIAL SUMMARY JUDGMENT AND DISMISSAL OF THE NEGLIGENCE COUNT (COUNT II) OF THE COMPLAINT WAS IN ERROR BECAUSE AN ATTORNEY-CLIENT RELATIONSHIP DID, IN FACT, EXIST BETWEEN PLAINTIFF AND DEFENDANT, RODNEY YOUMAN.
>
> A. Youman & Abad was a Law Firm.
>
> B. Plaintiff and Youman & Abad Entered Into an Attorney-Client Relationship, Pursuant to which that Firm Represented Plaintiff in Real Estate Ventures.

C. When Plaintiff Retained Youman & Abad, that Law Firm Assumed Responsibility for his Representation. Every Principal of that Firm, Including Rodney Youman, was Responsible for Damages Caused by the Tortious Acts and Omissions of any other Principal, Attorney or Employee.

D. Rodney Youman Should Be Estopped from Denying Liability for the Acts and Omissions of Youman & Abad.

II. THE TRIAL COURT ERRONEOUSLY HELD THAT PLAINTIFF COULD NOT CALL WILLIAM MARTIN, ESQ. AS AN EXPERT AT TRIAL AND THEN DISMISSED PLAINTIFF'S COMPLAINT FOR INSUFFICIENT EVIDENCE.

Rodney raises the following points in his cross-appeal[6]:

IV. THE COURT BELOW ERRED IN NOT GRANTING SUMMARY JUDGMENT ON THE CLAIM OF ORDINARY NEGLIGENCE (IF IT EXISTED), FRAUD, THEFT, AND MISREPRESENTATION, BECAUSE THE RECORD LACKED EVIDENCE TO SUBSTANTIATE ANY [OF] THE CLAIMS AND PLAINTIFF'S ADMISSIONS DISPROVED THE EXISTENCE OF THE CLAIMS.

V. THE COURT BELOW ERRED IN FINDING AS A MATTER OF LAW THAT A PARTY WHO SURVIVES SUMMARY JUDGMENT CANNOT HAVE PURSUED A FRIVOLOUS CLAIM, ESPECIALLY WHEN THERE IS PROOF THAT COUNSEL AVOIDED SUMMARY JUDGMENT

---

[6] We have deleted those points which merely oppose plaintiff's arguments.

WITH FALSE FACTS AND ADMITTED AS WE AWAITED THE JURY THAT HE LACKED EVIDENCE TO SURVIVE DISMISSAL.

VI. THE COURT BELOW ERRED ON THE ISSUE OF WHETHER PLAINTIFF'S AFFIDAVIT OF MERIT MET THE STATUTORY REQUIREMENTS BECAUSE, EVEN IF THE ANSWER FAILED TO ADDRESS EACH CLAIM, THE STATUTE REQUIRES ONLY THE FILING OF AN ANSWER WITHOUT REGARD TO ITS SUFFICIENCY.

## II.

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015). That is, we "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (quoting R. 4:46-2(c)). "When no issue of fact exists, and only a question of law remains," a reviewing court "affords no special deference to the legal

16

determinations of the trial court." Ibid. (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016)).

III.

We first address the summary judgment dismissal of plaintiff's legal malpractice count. Plaintiff contends an attorney-client relationship existed between Rodney and himself because Rodney was a principal of Youman & Abad; accordingly, he is liable for the tortious acts of any other principal, attorney, or employee of the firm, namely Thomas.[7] He further contends Rodney should be estopped from denying liability for the acts and omissions of the firm. We are unpersuaded by these arguments.

"Legal malpractice is negligence relating to an attorney's representation of a client." Sommers v. McKinney, 287 N.J. Super. 1, 9 (App. Div. 1996). In order to establish legal malpractice, the plaintiff must demonstrate three elements: "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney; (2) the breach of that duty by the defendant; and (3) proximate causation of the damages claimed by the plaintiff." McGrogan v.

---

[7] We address plaintiff's argument concerning vicarious liability and piercing the corporate veil in Part V of this opinion.

<u>Till</u>, 167 N.J. 414, 425 (2001) (citing <u>Conklin v. Hannoch Weisman</u>, 145 N.J. 395, 416 (1996)).

Rodney was not retained by plaintiff to perform legal services in New Jersey. Plaintiff and Rodney never discussed business. Plaintiff proffered no evidence Rodney personally participated in any theft or conversion of plaintiff's funds. Nor is there any evidence that Rodney personally performed legal services for plaintiff in Ecuador or the United States. Rodney's few encounters with plaintiff in Ecuador were informal and did not involve discussions of any transactions or legal services. Plaintiff remitted no funds to Rodney.

Moreover, Ecuador uses a civil law system. <u>Aguinda v. Texaco, Inc.</u>, 142 F. Supp. 2d 534, 542-43 (S.D.N.Y. 2001). Plaintiff cites no case law or statutes imposing personal liability on Rodney under these facts pursuant to Ecuador's civil law system. Additionally, plaintiff's legal malpractice expert, who is not licensed to practice law in Ecuador and does not claim to have expertise in Ecuador's civil law system, is not competent to offer an opinion regarding Rodney's alleged liability for professional malpractice under Ecuadorian law. Plaintiff bears the burden to establish the law of Ecuador. <u>See generally</u>, <u>Grossman v. Club Med Sales, Inc.</u>, 273 N.J. Super. 42, 49 (App. Div. 1994) (explaining that "a party who asserts an affirmative proposition has the burden

18

of establishing that proposition," such as whether the law of a foreign country was "different from the law of New Jersey"). Plaintiff did not meet that burden. He does not support any of his arguments by reference to Ecuador's civil code or interpretive case law.

"Expert testimony is required in cases of professional malpractice where the matter to be addressed is so esoteric that the average juror could not form a valid judgment as to whether the conduct of the professional was reasonable." Sommers, 287 N.J. Super. at 10 (citing Butler v. Acme Markets, Inc., 89 N.J. 270, 283 (1982)). "In rare cases, expert testimony is not required in a legal malpractice action where the duty of care to a client is so basic that it may be determined by the court as a matter of law." Ibid. (citations omitted).

Here, the duty of care and determination of whether that duty has been breached is not within a layperson's common knowledge. See Klimko v. Rose, 84 N.J. 496, 503-04 (1980). This case presents esoteric issues of vicarious liability and the duty of care under Ecuadorian law that are not within the ken of the average juror. The "jury is not competent to supply the standard by which to measure the defendant's conduct." Sanzare v. Rosenfeld, 34 N.J. 128, 134-35 (1961). "[T]he jury 'would have to speculate without the aid of expert testimony.'" Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 407 (2014)

(quoting Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001)). Thus, admissible expert testimony is required. Without admissible supporting expert testimony, "plaintiff[] [was] unable to satisfy [his] burden of establishing the applicable standard of care and a breach of that standard" and Rodney was "entitled to judgment as a matter of law." Id. at 414 (citing R. 4:46-2(c)).

The motion court properly determined there were no material facts in dispute concerning plaintiff's legal malpractice claim and that Rodney was entitled to judgment as a matter of law.

Because we affirm the summary judgment dismissal of plaintiff's legal malpractice claim, we do not reach Rodney's arguments regarding the extension granted to plaintiff to submit an affidavit of merit or the sufficiency of the affidavit of merit.

IV.

We next address the barring of plaintiff's expert's testimony and report. On the day trial was scheduled to commence, Rodney orally moved in limine to bar the plaintiff from introducing the report and testimony of William Martin, plaintiff's legal malpractice expert, because Martin's report only pertained to the legal malpractice claim that was dismissed on summary judgment, and not the

fraud and conversion count. Over plaintiff's opposition, the court granted the motion.

Plaintiff argues this was error because Martin's report stated: (1) Thomas "represented himself falsely as an attorney"; (2) "[i]n holding himself out as an attorney for Youman & Abad, [Thomas] induced plaintiff to be a client . . . and to deposit funds with him"; and (3) Rodney, "an attorney and partner in the law firm, completely failed to supervis[e] his employee Thomas Youman's activity and permitted this fraudulent activity to take place."

Plaintiff also points out that Martin's report asserted that Rodney breached his "nondelegable [fiduciary] duty to preserve clients' funds." (Citing Matter of Irizarry, 141 N.J. 189, 193 (1995)). Accordingly, plaintiff argues that "[a] breach of a fiduciary duty is 'sometimes also described as constructive fraud.'" (Citing Restatement (Third) of the Law Governing Lawyers, § 49, cmt. a (Am. Law Inst. 2000)).

"[A] trial court's evidentiary rulings are entitled to deference absent a showing of an abuse of discretion." State v. Nantambu, 221 N.J. 390, 402 (2015) (alteration in original) (quoting State v. Harris, 209 N.J. 431, 439 (2012)). "Ordinarily, the competency of a witness to testify as an expert is remitted to the sound discretion of the trial court. Absent a clear abuse of discretion, an

appellate court will not interfere with the exercise of that discretion." Carey v. Lovett, 132 N.J. 44, 64 (1993) (citing Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 411 (1960)). Reversal is not warranted unless the trial judge's ruling was "so wide of the mark that a manifest denial of justice resulted." State v. Carter, 91 N.J. 86, 106 (1982).

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." N.J.R.E. 702. Accordingly, "the witness must have sufficient expertise to offer the intended testimony." Muise v. GPU, Inc., 371 N.J. Super. 13, 58 (App. Div. 2004) (quoting State v. Kelly, 97 N.J. 178, 208 (1984)).

Plaintiff intended to use Martin as an expert in New Jersey law. Here, none of the transactions occurred in New Jersey or the United States. Plaintiff is a Canadian citizen. His interactions with Thomas and the law firm were either in Ecuador or through communications between Ecuador and Canada. The real estate transactions, transfers, depositing of plaintiff's funds, and execution of the contracts, occurred in either Ecuador or Canada.

Martin is not licensed to practice law in Ecuador. Nor does he otherwise claim to be an expert in Ecuadorian law or the civil law system in general. His report is limited to analysis of Rodney's liability for legal malpractice under New Jersey law and the Restatement (Third) of the Law Governing Lawyers. As we have explained, the legal malpractice claim was properly dismissed on motion for summary judgment. His report did not address liability for misrepresentation, fraud, theft, or conversion.

Plaintiff also argues it was error to grant the motion in limine on the day of trial. We recognize that "filing or consideration of in limine motions that seek an action's termination" is improper. L.C. v. M.A.J., 451 N.J. Super. 408, 411 (App. Div. 2017) (citing Seoung Ouk Cho v. Trinitas Reg'l Med. Ctr., 443 N.J. Super. 461, 464, 470 (App. Div. 2015); Klier v. Sordoni Slanska Construction, 337 N.J. Super. 76, 83-85 (App. Div. 2001)). Here, however, the legal malpractice claim had already been dismissed. Martin's report and his testimony relating to the opinions expressed in his report were not relevant or critical to establishing the alleged misrepresentation, fraud, theft, or conversion. The in limine motion was not dispositive; it did not seek dismissal of the fraud and conversion count. Cf. L.C., 451 N.J. Super. at 410 (defendant's motion in limine on the day of the final hearing sought "dismissal of his ex-wife's domestic

violence complaint"); <u>Cho</u>, 443 N.J. Super. at 464 (defendant's motion in limine "sought the dismissal of the complaint in its entirety"). Therefore, neither plaintiff's right to due process of law nor the requirements imposed by <u>Rule</u> 4:46 were violated.

An in limine motion filed at the time of trial "is permissible only when it addresses preliminary or evidentiary issues." <u>L.C.</u>, 451 N.J. Super. at 411. Rodney's motion was permissible since it only sought resolution of an evidentiary issue—barring Martin's report and testimony from evidence.

For these reasons, barring Martin's report and testimony at trial was not an abuse of discretion or error.

V.

We next address the dismissal of plaintiff's claim for misrepresentation, fraud, theft, or conversion.

As we have noted, the only nexus to New Jersey is that Rodney is a New Jersey resident, is licensed to practice law in New Jersey, and made some internet postings, advertisements, or statements regarding Thomas while present in New Jersey. Plaintiff admittedly has no evidence that Rodney personally participated in, or had knowledge of, the fraudulent scheme or conversion of funds that Thomas perpetrated against plaintiff. Nor does plaintiff claim he

24

relied on any of the internet postings, business cards, or advertisements placed by Rodney in engaging Thomas to handle the real estate funds or in retaining the law firm to represent him.

To establish fraud, plaintiff must prove "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rly on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 172-73 (2005) (quoting Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997)). A person can also be liable if he "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." Judson v. Peoples Bank & Trust Co., 25 N.J. 17, 29 (1957) (citation omitted).

The lack of any personal participation by Rodney in the fraud or conversion of plaintiff's funds coupled with the absence of any reliance of plaintiff on Rodney's internet postings, or other representations regarding Thomas' legal credentials, precludes recovery against Rodney for fraud or conversion.[8]

---

[8] New Jersey does not recognize separate torts of misrepresentation or theft. Rather, misrepresentation is encompassed in the tort of fraud and theft is

Rodney was a shareholder of the law firm. Plaintiff argues Rodney is personally liable for the torts committed by Thomas or the law firm because Rodney was a principal of the firm. While a partner of a general partnership is liable for the torts committed by another partner or employee, Youman & Abad was incorporated in Ecuador. Notably, Rodney was not an officer of the firm.

Under New Jersey law, a shareholder or employee of a corporation or LLC is not personally liable for the debts, negligence, or intentional torts committed by the corporation or LLC, unless they were a borrower, co-signor on the debt; were personally negligent; or personally participated in the intentional tort. See N.J.S.A. 42:2C-30.

A corporation is a separate entity from its shareholders. Lyon v. Barrett, 89 N.J. 294, 300 (1982). A primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise. Adolf A. Berle, Jr., The Theory of Enterprise Entity, 47 Colum. L. Rev. 343 (1947); Note, Piercing the Corporate Veil: The Alter Ego Doctrine Under Federal Common Law, 95 Harv. L. Rev. 853, 854 (1982); H. Henn, Law of Corporations § 146, at 250 (2d ed. 1961).

---

encompassed within the tort of conversion. Accordingly, we do not discuss misrepresentation or theft separately.

Nevertheless, the power to look beyond the corporate form is well established. Stochastic Decisions, Inc. v. DiDomenico, 236 N.J. Super. 388, 393 (App. Div. 1989). Piercing the corporate veil is a doctrine designed to prevent a corporation or limited liability company "from being used to defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law." Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 500 (1983) (citations omitted).

Except in cases of fraud, injustice, or the like, courts will not pierce a corporate veil. Lyon, 89 N.J. at 300. Personal liability may be imposed upon a controlling stockholder of a close corporation where the controlling stockholder disregards the corporate form and utilizes the corporation as a vehicle for committing equitable or legal fraud. Marascio v. Campanella, 298 N.J. Super. 491, 502 (App. Div. 1997) (citing Walensky v. Jonathan Royce Int'l, Inc., 264 N.J. Super. 276, 283, (App. Div. 1993)). A party seeking to pierce the corporate veil must establish: (1) that the entity was "dominated" by the individual owner, and (2) "that adherence to the fiction of separate corporate existence would perpetrate a fraud or injustice, or otherwise circumvent the law." Verni ex rel. Burstein v. Harry M. Stevens, Inc., 387 N.J. Super. 160, 199-200 (App. Div. 2006) (citing Ventron, 94 N.J. at 500-01).

27

Similarly, the Revised Uniform Limited Liability Company Act, N.J.S.A. 42:2C-1 to -94, provides in pertinent part:

> [t]he debts, obligations, or other liabilities of a limited liability company . . . are solely the debts, obligations, or other liabilities of the company[,] and [they] do not become the debts, obligations, or other liabilities of a member or manager solely by reason of the member acting as a member or manager acting as a manager.
>
> [N.J.S.A. 42:2C-30.]

The record is devoid of any facts warranting imposition of individual liability on Rodney for the acts of Thomas or the corporation by piercing the corporate veil.

Nor is there any basis to impose individual liability on Rodney under the tort participation theory. The "essential predicate for application of the [tort participation] theory is the commission by the corporation of tortious conduct, participation in that tortious conduct by the corporate officer and resultant injury to the plaintiff." Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 309 (2002). Under that theory, corporate officers and employees could be individually liable for their affirmative acts of misrepresentation.

In Allen v. V and A Brothers., Inc., 208 N.J. 114 (2011), the Court held the Consumer Fraud Act (CFA) permits the imposition of individual liability upon one whose acts are part of a violation by a corporation. Id. at 131 (citing

N.J.S.A. 56:8-2). The Court made clear, however, that "individuals were not liable merely because of the act of the corporate entity and no court suggested that they could be." Id. at 132. In order to impose individual liability, the individual employee or corporate officer must have personally "engaged in conduct prohibited by the CFA." Ibid. That reasoning applies with equal force here.

Aside from the statements Rodney published that misrepresented Thomas as an attorney, which plaintiff admittedly did not rely upon, plaintiff presented no evidence that Rodney personally engaged in fraud, the conversion of plaintiff's funds, or any conduct that led to the conversion. Accordingly, he is not personally liable to plaintiff under the tort participation theory.

In sum, plaintiff lacked evidence to render Rodney personally liable for fraud or conversion for his own conduct, the acts of Thomas, or the acts or omissions of the law firm. Accordingly, we discern no basis to overturn the order dismissing the complaint regardless of the comments of the trial judge that led to plaintiff deciding not to proceed with the jury trial and the ultimate dismissal.

29

VI.

Lastly, we address the denial of Rodney's claim for frivolous litigation sanctions. The trial court denied such sanctions because it denied summary judgment of the fraud and conversion count, citing United Hearts.

We review the award or denial of frivolous litigation sanctions for abuse of discretion. McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 498 (App. Div. 2011). Reversal is warranted "only if [the decision] 'was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error of judgment.'" Ibid. (quoting Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005)).

In United Hearts, we reversed the award of frivolous litigation sanctions where the trial court had denied summary judgment in part and allowed the case to proceed to trial. 407 N.J. Super. at 394. We concluded the attorney was not required to withdraw the complaint even after the court granted summary judgment in part and denied it in part. Id. at 393. We explained:

> A court may impose sanctions upon an attorney if the attorney files a paper that does not conform to the requirements of Rule 1:4-8(a), and fails to withdraw the paper within twenty-eight days of service of a demand for its withdrawal. R. 1:4-8(b)(1).
>
> For purposes of imposing sanctions under Rule 1:4-8, an assertion is deemed "frivolous" when "no

rational argument can be advanced in its support, or it is not supported by any credible evidence, or it is completely untenable." First Atl. Fed. Credit Union v. Perez, 391 N.J. Super. 419, 432 (App. Div. 2007) (quoting Fagas v. Scott, 251 N.J. Super. 169, 190 (Law Div. 1991)).

. . . .

"[C]ontinued prosecution of a claim or defense may, based on facts coming to be known to the party after the filing of the initial pleading, be sanctionable as baseless or frivolous even if the initial assertion of the claim or defense was not." Iannone v. McHale, 245 N.J. Super. 17, 31 (App. Div. 1990) (applying N.J.S.A. 2A:15-59.1). The "requisite bad faith or knowledge of lack of well-groundedness may arise during the conduct of the litigation." Ibid. (citing Chernin v. Mardan Corp., 244 N.J. Super. 379 (Ch. Div. 1990)).

Sanctions are warranted "only when the pleading as a whole is frivolous or of a harassing nature[.]" Id. at 32 (quoting Romero v. City of Pomona, 883 F.2d 1418, 1429 (9th Cir. 1989)). "That some of the allegations made at the outset of litigation later proved to be unfounded does not render frivolous a complaint that also contains some non-frivolous claims." Ibid. (quoting Romero, 883 F.2d at 1429).

. . . .

Indeed, Rule 1:4-8(a)(3) makes clear that an attorney need not withdraw a pleading if it is "likely" that the allegations will have evidentiary support or "will be withdrawn or corrected if reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support[.]"

31

. . . .

> [S]anctions are not warranted if an attorney has a reasonable and good faith belief in the claims being asserted. In our judgment, a pleading cannot be deemed frivolous as a whole nor can an attorney be deemed to have litigated a matter in bad faith where, as in this case, the trial court denies summary judgment on at least one count in the complaint and allows the complaint to proceed to trial.

> [Id. at 389-94.]

That is precisely what occurred here. The court granted summary judgment dismissing the legal malpractice count but denied summary judgment as to the fraud and conversion count, allowing those claims to proceed to trial. On the day trial was to commence, plaintiff ostensibly agreed to the dismissal of the fraud and conversion count after the court barred him from introducing Martin's report or testimony. Plaintiff did so without Rodney renewing his motion to dismiss that count or the court substantively ruling that there was insufficient evidence for plaintiff to prevail or that the fraud and conversion count was frivolous. Instead, plaintiff followed the trial judge's suggestion that he pursue an appeal of the dismissal of the legal malpractice count and the order barring the introduction of Martin's testimony and report. To be sure, the trial judge did not issue a ruling determining that the fraud and conversion allegations

were frivolous. The merits of plaintiff's claims of fraud and conversion were never adjudicated on the merits.

Moreover, plaintiff obtained a default judgment against Thomas, Youman & Abad, and Youman & Youman on the fraud and conversion count. Defendant's initial motion to dismiss the complaint was denied. Rodney abandoned his defenses of lack of subject matter jurisdiction and forum non conveniens at the trial level and has not pursued those defenses on appeal.

Rodney contends the summary judgment motion judge erred in finding that several genuine issues of material fact precluded dismissal of the fraud and conversion count. We disagree. The judge was required to view the facts in a light most favorable to plaintiff and afford plaintiff all reasonable inferences. R. 4:46-2(c); Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 4:46-2 (2020). We discern no error.

Given the unique facts and circumstances, the denial of frivolous litigation sanctions was not an abuse of discretion.

To the extent we have not expressly discussed any issues raised by either party it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION